# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: NOVEMBER 2, 2017
NOT TO BE PUBLISHED

Supreme Court of Kentucky

FINAL

2016-SC-000689-WC

DATE 11/27/17 Kim Redmon, DC

FORD MOTOR COMPANY (KTP)                                    APPELLANT

V.
                        ON APPEAL FROM COURT OF APPEALS
                        CASE NO. 2016-CA-000600-WC
                        WORKERS' COMPENSATION BOARD
                        NO. 13-WC-58839

RONALD COLEMAN, JR.; HON. J.                               APPELLEES
GREGORY ALLEN, ADMINISTRATIVE LAW
JUDGE; AND
WORKERS' COMPENSATION BOARD

## MEMORANDUM OPINION OF THE COURT

### AFFIRMING

Appellee Ronald Coleman, Jr., filed a workers' compensation claim

alleging injuries to his right hand, wrist and elbow related to his work on the

truck assembly line at Ford Motor Company. An Administrative Law Judge

(ALJ) determined Coleman was entitled to temporary total disability (TTD)

benefits, permanent partial disability (PPD) benefits and medical benefits for

work-related right carpal tunnel syndrome and right lateral epicondylitis. The

Workers' Compensation Board affirmed the award, and the Court of Appeals

also affirmed, rejecting Ford's two appellate issues. On appeal to this Court,

Ford continues to maintain that (1) there is not substantial evidence to support

the ALJ's finding that Coleman's lateral epicondylitis was work-related and (2)

there is not substantial evidence to support the ALJ's finding of a 6% whole person impairment attributable to the work-related injury. For the reasons stated herein, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

Coleman began working at Ford in 1999, first in the body shop and later on the frame line where he performed repetitive-motion jobs including what was referred to as "frame flip" and a VIN stamping job. One task required him to break apart wiring harnesses (also referred to as wire looms) and install them on diesel trucks.

Coleman had some right wrist issues in 2007 that resolved with injections. After several years symptom free, Coleman reported pain in his right wrist radiating into his forearm and elbow in a June 2013 visit to the Ford medical department. He took large amounts of ibuprofen to deal with the pain. When light duty, physical therapy and injections were not successful, he had surgery on his right wrist and right elbow in November 2013. In the meantime, Ford had reassigned Coleman to a new position where he drove trucks off the assembly line. At the time of his claim, he remained in that position earning the same hourly rate as pre-injury but making higher wages due to overtime. He had no difficulties with his current assignment but continued to have aching in his right elbow and pain in his right wrist.

Coleman filed a Form 101 on June 15, 2015. In support of his claim, he provided records from June 3, 2013 when he reported to the medical department at Ford and complained of his wrist, arm and elbow pain. He also

2

filed records from Dr. Navin Kilambi pertaining to the November 2013 surgery and Dr. Tuna Ozyurekoglu pertaining to additional physical therapy and injections post-surgery. Coleman submitted a September 24, 2015 report from Dr. Jules Barefoot who evaluated Coleman for purposes of his compensation claim.

Dr. Barefoot noted Coleman's history of complaints and the November 2013 surgery by Dr. Kilambi—a right carpal tunnel release and right open lateral epicondyle debridement and extensor tendon debridement. He also noted Dr. Ozyurekoglu's treatment with physical therapy and injections. Dr. Barefoot diagnosed bilateral median nerve neuropathy; status post right carpal tunnel release and right open lateral epicondyle debridement and extensor tendon debridement; persistent right elbow common extensor tendinosis and left carpal tunnel syndrome. Based on Coleman's loss of grip strength, Dr. Barefoot concluded he had a 10% upper extremity impairment which equaled a 6% whole person impairment. He further stated: "I would apportion 100% of this 6% whole person impairment to work-relatedness. A review of Mr. Coleman's work records from Ford indicates a long history of multiple injuries to his upper extremities."

Ford countered with some of Coleman's medical records and a report from Dr. Richard DuBou, who evaluated Coleman at Ford's request in October 2015. Dr. DuBou found Coleman's carpal tunnel injury to be work-related but stated "It is unclear whether or not the lateral epicondylitis surgery is associated with work. It is not felt to be work related, at least in England." He

3

attached the entire chapter on epicondylitis from the American Medical Association's second edition of "Guides to Evaluation of Disease and Injury Causation," noting "the jury is out for an occupational cause of lateral epicondylitis." Ultimately, Dr. DuBou assigned a 4% upper extremity impairment based on the carpal tunnel, which translated to a 2% "whole person" impairment.

In assessing the work-relatedness of Coleman's right elbow condition, the ALJ stated in relevant part:

> Here, the evidence on work-relatedness of the right elbow condition is mixed. Plaintiff relies upon the report of Dr. Barefoot who finds the entirety of his 6% impairment rating related to plaintiff's "long history of multiple injuries to his upper extremities."
> On the contrary, Dr. DuBou examined the plaintiff at the request of the defendant. The physician did not feel the plaintiff's elbow condition, diagnosed as lateral epicondylitis, was related to the plaintiff's work with the defendant. He did feel the plaintiff's carpal tunnel was work-related, assessed a 2% whole person impairment and felt that while plaintiff could return to work without restrictions, he did agree with plaintiff that work with wire looms would cause him additional discomfort. This was apparently consistent with Dr. DuBou's treatment history of other patients that had related work with wire looms to their presenting symptomology.
> The ALJ has thoroughly reviewed the report of Dr. DuBou and his rationale for the opinion the plaintiff's elbow condition is not work-related. The physician makes several references to a publication that questions the sufficiency of only repetitive work as causative of epicondylitis. Dr. DuBou concluded that the "jury is out for an occupational cause of lateral epicondylitis." Dr. DuBou was clear that plaintiff had symptomatic right lateral epicondylitis, had undergone surgery for the condition and even recommended a different form of non-incisional treatment for same. When formally queried as to the reasonableness, necessity and work-relatedness of treatment and surgery on question 4 of his report, Dr. DuBou testified that while the carpal tunnel surgery was appropriate "it is unclear whether or not the lateral epicondylitis surgery is

4

associated with work. It is not felt to be work related, at least in England."

> The ALJ interprets and infers from this testimony that Dr. DuBou is unsure as to the relatedness of the plaintiff's right elbow condition. However, the ALJ does not conclude that it is a definitive rejection of plaintiff's allegations. As noted above, Dr. DuBou indicated that the wire loom part of plaintiff's job had been the cause of a number of patients coming into his office for treatment. Given the plaintiff's complaints, the addition of the wire loom installation into plaintiff's job duties and the opinion of Dr. Barefoot, the ALJ finds the plaintiff's right elbow conditions related to his work with the defendant.

The ALJ further found that Dr. Barefoot's "assessment of impairment most accurately addresses the entirety of the plaintiff's compensable conditions." The ALJ thus determined that Coleman had a 6% whole person impairment.

On appeal, the Workers' Compensation Board noted that since Coleman had been successful in proving his claim before the ALJ, the issue on appeal was whether substantial evidence supported the ALJ's decision. Finding that there was such evidence of record and that the ALJ sufficiently explained his reliance upon Dr. Barefoot's assessment, the Board affirmed.

The Court of Appeals travelled the same path as the Board and found that Dr. Barefoot's report constituted substantial evidence supporting the ALJ's conclusion that Coleman's right elbow condition was caused by his employment. Because Ford's second appellate argument, the challenge to the 6% whole person impairment finding, was predicated on being successful on the challenge to the work-relatedness of the elbow condition/epicondylitis, resolution of the work-relatedness in favor of Coleman meant that Ford's challenge to the whole person impairment rating was likewise unsuccessful.

5

## ANALYSIS

The ALJ has the sole discretion to determine the quality, character, and substance of the evidence. *Paramount Foods, Inc. v. Burkhardt*, 695 S.W.2d 418, 419 (Ky. 1985). As the Board noted, its function is limited to determining whether the ALJ's findings are so unreasonable that they must be reversed as a matter of law. *Ira A. Watson Dept. Store v. Hamilton*, 34 S.W.3d 48 (Ky. 2000). If the ALJ's findings are supported by substantial evidence, they are not to be disturbed on appeal. *Special Fund v. Francis*, 708 S.W.2d 641, 643 (Ky. 1986). "Although a party may note evidence which would have supported a conclusion contrary to the ALJ's decision, such evidence is not an adequate basis for reversal on appeal." *Ira A. Watson*, 34 S.W.3d at 52 citing *McCloud v. Beth-Elkhorn Corp.*, 514 S.W.2d 46 (Ky. 1974). The Court of Appeals is to "correct the Board only where [that] Court perceives the Board has overlooked or misconstrued controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause gross injustice." *Western Baptist Hosp. v. Kelly*, 827 S.W.2d 685, 687-88 (Ky. 1992).

Ford maintains that the ALJ's finding that Coleman's lateral epicondylitis (right elbow condition) was work-related is not supported by substantial evidence because Dr. Barefoot, on whom the ALJ relied, "never found" the condition to be work-related. In Ford's view, Dr. DuBou's opinion on causation "was not only more persuasive, but it was the only true opinion on causation." We disagree for two primary reasons.

6

First, while Dr. Barefoot's opinion is admittedly brief, he plainly found that review of Coleman's "work records from Ford indicates a long history of multiple injuries to his upper extremities" and included the elbow condition in assessing impairment. The ALJ pointed to this finding in his initial opinion and, in his order on reconsideration, further noted that a questionnaire attached to Dr. Barefoot's narrative report contains the right elbow condition as one of the diagnoses that he considered work-related. Second, as quoted above, the ALJ interpreted Dr. DuBou's report as reflecting the physician was "unsure" about the work-relatedness of the elbow condition but, in any event, the ALJ found no "definitive rejection" of Coleman's claim regarding work-relatedness in Dr. DuBou's opinion.

The ALJ plainly weighed the evidence before him and made a work-relatedness finding that had support in the medical evidence. This assessment was the ALJ's prerogative, *Paramount Foods*, 695 S.W.2d at 419, and while Dr. Barefoot's opinion was not extensive it was sufficient to constitute substantial evidence. Notably, Dr. DuBou did not agree that Coleman's elbow condition was work related but he did not fully reject it either, concluding it was "unclear whether or not the lateral epicondylitis surgery is associated with work." Under these circumstances, we find no basis for reversing the ALJ's findings, which were properly affirmed by both the Workers' Compensation Board and the Court of Appeals.

Ford's second appellate issue, as in the Court of Appeals, is wholly derivative of and dependent upon the success of the first issue. Ford

7

maintains that because there is not substantial evidence supporting the finding that Coleman's elbow condition is related to his work, there can be no 6% whole person impairment and the matter must be remanded to the ALJ for a finding that Coleman has a 2% whole person impairment as found by Dr. DuBou. Having rejected Ford's first argument regarding substantial evidence, we likewise reject this argument.

After careful review and for the foregoing reasons, we affirm the Court of Appeals.

Minton, C.J.; Cunningham, Hughes, Keller, Venters, and Wright, JJ., concur. VanMeter, J., not sitting.


COUNSEL FOR APPELLANT
FORD MOTOR COMPANY (KTP):

George T. Kitchen, III
Reminger Co., LPA


COUNSEL FOR APPELLEE,
RONALD COLEMAN, JR.:

Nicholas Murphy